The Fourth District Appellate Court of the State of Illinois has now convened. The Honorable Catherine E. Zeno presiding. Thank you. Good morning, counsel. This is case number 4-221030, Thomas Key Sr. v. Accolade Healthcare of Paxton Senior Living LLC. Would counsel identify themselves for the record, please? First counsel for the appellant. Jonathan Nestler, Your Honor, and good morning. Good morning. And counsel for the appellee. Siobhan Murphy, Your Honor, good morning. Good morning. Mr. Nestler, you may begin your argument. Thank you, Your Honor, and may it please the court, counsel. The trial court erred when it dismissed and compelled arbitration of the complaint as three-count complaint. It's important to understand at the outset that the three counts of the complaint are pursuant to the Illinois Survival Act and one count pursuant to the Illinois Wrongful Death Act. The reason this is significant to explain at the outset is because the error committed by the trial court with regard to the Survival Act counts is different than the error committed for the Wrongful Death Counts. So I'd like to begin with the Survival Act count, if it pleases the court. The two Survival Act counts are filed pursuant to the Illinois Nursing Home Care Act. The Illinois Nursing Home Care Act is a statutory grievance procedure set out by statute that explains how a resident of a nursing home might remedy a grievance or injury suffered by that resident at the hands of the nursing home. And the Survival Act, in turn, allows for that cause of action to proceed forward past the death of the resident. The trial court's error with regard to the survival action claims is that the trial court completely ignored the Nursing Home Care Act. Instead, the trial court applied an analysis pursuant to the Illinois Uniform Arbitration Act. The Illinois... Oh, excuse me. Good morning. Doesn't the FAA apply here and doesn't it preempt the Nursing Home Care Act? No, Your Honor. The two points, please. 306... I'm sorry. 307. No, Your Honor. It does not apply because there's been no legally sufficient showing that interstate commerce is involved in the nursing home agreement before this court. We can look to... I don't want to interrupt you, it's so hard over Zoom, so I apologize. We'll try to do a little bit of back and forth here, but hasn't our Supreme Court, the United States Supreme Court, taken a pretty broad view of what it means for a contract to evidence a transaction that involves commerce? It does, Your Honor, and I don't disagree with that, but as Your Honor is aware, pursuant to the Erie Doctrine, what the United States Supreme Court is talking about is substantively how to proceed if the nursing home care, or excuse me, if the Federal Arbitration Act applies. It doesn't change the procedure in the state of Illinois. The procedure in the state of Illinois requires that if the evidence at the 619 stage does not appear on the face of the complaint, then it must be supported by affidavit, and that's contained within the Illinois Code of Civil Procedure, Section 2-619. The very section that the nursing home in this case is requesting that the court dismiss the case upon. So in the absence of the legally sufficient and procedurally correct showing that interstate commerce is involved in this agreement, then the court cannot consider those facts, and those facts that the court would consider had this been done appropriately are shown in first the Fossler case, where the court considers in that case an affidavit filed by the nursing home that has facts that support that the nursing home accepts Medicare payments, specifically the amounts of Medicare payments accepted for the resident in question in that case, and it also showed evidence that the nursing home was buying supplies from other states. We can also look to the Carter case, and I want to make sure I distinguish here. This is when the Carter case was at the appellate level. At the appellate level, the Carter case reviewed another affidavit filed by a nursing home, and really based upon those same facts, these facts that showed that the nursing home accepted Medicare payments, the amount of Medicare payments they accepted, the amount of Medicare payments they had accepted over a two-year course, the fact that they did business with other states for services, and they did business for other states for medical products, and the court looked at that affidavit and said, yeah, this supports interstate commerce, so we get past that first step. So now we can look to the Federal Arbitration Act, but in the absence of that affidavit counsel, excuse me, following up with a question for clarification, then. You've mentioned how those other cases are slightly different, but in this case in Exhibit B, didn't defendant make reference generally to accepting payments through Medicaid, and I know they make some other references. Why are those generalities not sufficient here? And I know you've noted the affidavit, but why would those not be sufficient? At least those that were contained in Exhibit B. I think that that goes to, first, the affidavit requirement, which I won't go back into by Your Honor's request. But second, the contract can be attached to prove that the contract exists and prove the terms of the contract. But facts that are extrinsic to the contract, like any sort of interstate commerce that might be taking place in conjunction with the contract, are inappropriate to be shown. So, you know, it's just it's a fundamental aspect of Illinois law that in order to get those facts before the court, if they're not on the face of the pleading attack, if they're not on the face of the complaint, then it's inappropriate for a court to consider those facts. Now, they can remedy that by, the nursing home can remedy that by filing the affidavit and put those facts before the court. But in this case, it failed to do so. In the circumstance, Your Honor, that you do look to Exhibit B, and you do say, well, let's just assume, arguendo, that the Federal Arbitration Act applies. The very clause that initiates the arbitration clause defeats the nursing home's argument in the sense that within that same clause, it states, nothing in this rider should be construed to contradict any applicable Illinois statutory grievance procedure. That's a term of the contract itself. So even if the FAA applies, and even if we get into the arbitration clause, by the very terms of that clause, we see that the parties have agreed that it doesn't apply in Illinois. And we can look to the Clanton case for guidance on this. The Clanton case is a 2023 Illinois Supreme Court case. This case was put on hold pending the decision in that case. And the Clanton case stands for a really simple proposition. The Clanton case stands for a very simple proposition that the court's responsibility, the court's job is to enforce the terms of a contract. And that seems really straightforward, right? So this is basic contract law. Why is the Illinois Supreme Court rendering this decision? Well, when you look to the reasoning of the Clanton decision, I think it sheds some light on that. The reasoning of the Clanton decision is, look, we have the Federal Arbitration Act. We also have this overarching preference in the law to arbitrate cases. But it's not the court's responsibility to find a way to arbitrate. It's not the court's responsibility to look to a contract and say, okay, we have to reach this overarching goal of arbitration. The goal of the court is to enforce the terms of the contract. And if the terms of the contract say, we don't arbitrate this case, then that's the terms that have been agreed to, and that's the terms that should be applied to the parties in the case. And in the Clanton case, it happened to be that the clause terminated upon the death of the client, of the resident. And so they said, well, it terminated. That was the term of the contract. We're not seeking a way to arbitrate this case. We're enforcing the terms of the contract. In this case, there is a term that was agreed to that nothing in the arbitration rider should be construed to contradict any applicable Illinois statutory grievance procedure. That would include the Illinois nursing home care case, which would bring that back in and that statutory procedure, that statutory grievance procedure prohibition on waiving a jury trial and waiving the ability to file a claim with the court. So I think even if we get to the FAA, which I don't think we do because there's been no legally sufficient showing of interstate commerce, but arguendo, if we get there and apply the arbitration clause, the arbitration clause is self-defeating by its own terms. And under Clanton, the court should enforce those terms as opposed to look for a reason to reach arbitration. Unless the court has any other questions with regard to the survival action, I would restate that the court, the trial court erred when it dismissed and compelled arbitration of those survival actions and the court should reverse those and remand those counts for further procedure in the state court, the trial court. I'm sorry. I have one other question on the survival act counts. If a nursing home accepts Medicare and Medicaid funds, doesn't that mean that all care rendered at that nursing home, including care of private pay patients involves commerce? And so why do we need an affidavit for a situation like that? We need an affidavit for a situation like that. Well, first, let me answer your Honor's question. I don't know is the answer to the first question, whether simply receiving Medicare funds places them in interstate commerce or not. Unfortunately, that issue was not brought before the court because there was never an at the trial court level when the interstate commerce argument was brought up, it was unaddressed entirely in the in the reply by the nursing home. No affidavit was filed and the argument wasn't addressed whatsoever. However, again, let's just take the question and say that for the purpose of the question that yes, that is enough. If that is enough, it still doesn't defeat the Illinois procedural requirement. Illinois has a very specific procedural requirement set out by statute. If a defendant is going to ask for the extraordinary remedy that a case should be dismissed based on Section 2-619, which really says, hey, you know, Judge, this case, if we take all the facts as true is a valid case. However, even though it's a valid case, we have this defense and this defense is as follows and it lists the nine different defenses you can have. The court says, if you're going to take this extraordinary remedy to take an otherwise valid case and throw it out, then the facts that support that defense have to appear on the face of the pleading or they have to appear by affidavit. And it's such a low standard and such a simple thing to do that one would ask then why was no affidavit filed in this case? We of course can't speculate whether it wasn't filed because it simply wasn't filed or maybe it is that the reality doesn't support the facts necessary to put in the affidavit. Those would be the two options and without the affidavit, we can't speculate on which one it is. And that's why it's so important that an affidavit is filed because otherwise the court would be absolutely dipping its toe into speculating about whether the facts that it's assuming into evidence that it's assuming on the record are real facts or not. The affidavit clears that up. And it also allows the plaintiff to file a counter affidavit, you know, so maybe not in the Medicare case exactly, but in another case, the plaintiff would be able to file a counter affidavit and then the 619 rule goes on to say, if there's two competing affidavits, here's what the court should do. And I think that that's a really important aspect of the requirement for the affidavit, Your Honor. Thank you. You may proceed with the rest of your argument. Thank you. Thank you, Your Honor. Unless there's any other questions moving on to the wrongful death case. In my opinion, the reason that the trial court erred when it dismissed the wrongful death case is because it failed to recognize the inherent differences between survival actions and wrongful death actions in Illinois. A survival action we've already talked about, a wrongful death action is a creature of statute and the Illinois legislature saw fit to create a cause of action and give it to the heirs and next of kin of a decedent. So the cause of action never belongs to the decedent in life. It doesn't even exist until the death of the decedent, as long as that's been caused by the negligence of another. And at that point, it comes into existence and it always belongs to the next of kin. This is something that was recognized by the Illinois Supreme Court in Carter. The Carter case is directly on point. And what the Carter case stands for the proposition of is that it's really, again, a pretty simple contract rule that a non-party to a contract cannot be held to the terms of that contract. In other words, the contract terms are non-binding on non-parties and it really boils down to that simple analysis. That's a really straightforward case. I think it's unambiguous. It's directly on point. I think that the trial court's error is in failing to recognize the difference and just dismissing the claim outright. And I would ask the court to reverse that order, dismissing the wrongful death case and remand it to the trial court for further procedure proceedings. Thank you. I don't see a time limit and I apologize. There used to be lights. Well, there would be. You still have time left. There's a two minute warning that notice that does come on the screen, but it has not come on yet. So you do have additional time. I would just finish them by saying the Marmot case, which is a United States Supreme Court case that is cited by the nursing home in response to the wrongful death case, is not contradictory to the Carter case and it's really fully congruent. That case is limited to the finding that the FAA can also preempt public policy in the state. However, it clearly states that it's limited to that holding. In fact, there's two counts that it remands back down because they're based on unconscionability. And the court essentially says that it's unclear whether the unconscionability was really decided and in doing so really strictly limits the holding of Marmot to the public policy issue. But I think importantly, it also says that parties to a contract should be bound by the terms of that contract. And the holding in Carter is that these next of kin are not parties to the contract and therefore should not be bound to the terms of the contract. So I would finish by pointing out that the Marmot case is fully reconcilable to the holding in Carter. And in fact, I think it's worth noting that the Marmot case precedes the Carter case. The Carter case, although they both came out in 2012, Carter came out later in time. So the presumption is that the Illinois Supreme Court would have been aware of that and taken it into consideration as part of its opinion. So for those reasons, I would ask that this court reverse the dismissal of all counts of the plaintiff's complaint and the compulsion to arbitrate those counts and remand the case to the trial court for further proceedings. Thank you very much, counsel. Ms. Murphy. Thank you, Your Honor. May it please the court and counsel. My name is Siobhan Murphy. I represent Accolade Healthcare Paxton Senior Living LLC. We respectfully submit that the decision below should be affirmed. The record properly before the court firmly established that plaintiff's decedent entered into an arbitration agreement under the Federal Arbitration Act in consideration of her residency at Accolade. I will begin by touching on a few points from the record that I think counsel Floss is over. Well, counsel, good morning. I'd first like to ask that you perhaps respond to a point that counsel made with respect to your 2619 or the 2619 motion that was made below and why an affidavit was not required and is not required with respect to the issue of interstate commerce. A part of that response has to do with what appears on the face of plaintiff's complaint. And a part of that response has to do with the fact that it's undisputed that exhibit B, the contract, is the contract. And so I'd like to take those one at a time. The face of plaintiff's complaint in each count specifically alleges a federal regulations as a source of duty. And you can find that at A15, A16, A18, and A20. The portion of the federal regulation cited is 42 CFR 483. That source of duty applies where a nursing home is participant in Medicare. It comes into the law through something we refer to as OBRA. But on the face of the complaint here, each and every count is grounded in a statute, a regulatory provision that is authorized by statute, which leads us to the natural conclusion that this nursing home is a participant in Medicare. And so if I set aside the contract itself on the face of the complaint, I think we have established that what defendant does affects interstate commerce, which is the proper test. Did the court not need to know whether this decedent was a private pay? Or actually whether Medicare paid for her care? I think that would be the correct ruling, Your Honor. The intent of the Federal Arbitration Act is to extend the availability of its provisions to the full extent permissible under the Interstate Commerce Clause, which in this case would mean affects interstate commerce, not engaged in interstate commerce. That's a distinction in the language in the case law. And when you're dealing with nursing home treatment, which is a highly regulated field where the federal government is so endemic that you see these complaints commonly sent to the federal regulations as sources of duty, I would submit that on the face of the complaint, you have an admission that in fact, the federal commerce requirement is met because nursing home actions affect interstate commerce, whether or not an individual is in fact receiving Medicare or Medicaid. But I would also submit, Your Honor, that the court will properly consider the undisputed terms of the contract, which is Exhibit B. The plaintiff appellant admits at their brief, page 8 of 26, that those are the terms of the contract. And the terms of the contract clearly contemplate the economic involvement of federal funding through Medicare and Medicaid, also references other federal obligations like HIPAA and Social Security. And I would refer this court, there's a number of pages where these provisions exist, but it go to the appendix at page 64 for Medicare and Medicaid provisions. The agreement to arbitrate references the FAA, which is another acknowledgement of a federal connection. There is a provision for federal notices to be given at appendix 76 to 77. And the contract itself references 42 CFR 483.20. And the Social Security Act at appendix 108. At 105, it's provided in the contract that it's a normal part of your care, that is to say Ms. Keyes' care, for accolade to determine her Medicare or Medicaid rights. So the fact that the facility is engaged in actions affecting interstate commerce is I think clear, not just on the face of the complaint, but also on the contract, which is undisputed. One more point that maybe... Good morning, counsel. If I may ask just a couple of points of clarification. I know the Fossler case... I'm sorry. I thought I was losing the connection, Your Honor. Okay, thank you. I know the Fossler case has been discussed. And in that case, it references section two of the FAA and references the Southland Corporation versus Keating 465 U.S. 1 case. And notes that section two that the Supreme Court has said, we discern only two limitations on the enforceability of arbitration provisions governed by the FAA. They must be part of a written maritime contract or a contract evidencing a transaction involving commerce. And I guess my question is, you've talked a little bit about those affecting commerce, but doesn't this suggestion as a transaction suggest it needs to be... I think we've lost her. Hold on. She froze for a minute. Judge, it looks like she left the meeting. I'll go ahead and pause to hear Mr. Nettler. I'll go ahead and put you back in the waiting room and we'll resume as soon as she reconnects. I was asking one. Thank you. I had referred to that section where they cite the Southland and in particular, section two of the FAA. And I guess my question was looking at the reference to a contract evidencing a transaction involving commerce. And I guess the question I had was whether the distinction where it references specifically a transaction means that in the context of the 619, we needed more than generalities. We needed something specific with regards to this trans... Not just that the defendant overall perhaps was receiving Medicaid payments. And I think the right analysis of your honor is to recall that the decisional case law requires that the contract affect interstate commerce rather than the more narrow requirement that the particular services to be provided involve interstate commerce. And I also think it's really worth noting in this context that the contract we've been provided is very explicit in the expectation that Medicare and Medicaid will be reviewed and Medicare and Medicaid rights will be asserted on behalf of the resident that's key as a normal part of the facility's services. So it's not that you have a situation where somebody comes in with contemplation that they would only ever be a private pay client or resident. The contract as a whole reflects the expectation that Medicare and Medicaid will be a component of any care to be provided to the resident. And that includes why you have in the contract the resident being informed of federal sources to complain to if in fact there's a problem with standard care or other concerns. There are physicians that refuse to take Medicare patients. To your knowledge, are there functioning nursing homes in the state of Illinois that no longer take Medicare patients? I have never represented them. Okay, that's a fair answer. But I'm suggesting that with the progress of the delivery of medical services and the complaints we hear from hospitals and doctors about reimbursement from Medicare, is it conceivable that during the course of a year a nursing home could stop receiving Medicare payments? Because they have no clients. They have clients that qualify, but those clients have been sent to other facilities. In other words, you've got a private pay nursing home. Is that feasible in your knowledge? It is, in my mind, conceivable that some other entity could structure its provision of services in that way. But the contract we have been providing makes it clear that in this particular nursing home they are a participant with federal government funding. That's based on the contract she signed when she went in. It is. What if the status of the nursing home changes? Is there going to be a new contract that supplants this one? Or are they just going to keep the contract, but they're getting all their money from private pay? I would anticipate that this contract is going to impact interstate commerce on its face, which is the test I think applies. I think there's a hypothetical out there that some nursing home may at some point completely decouple itself from federal funding and from interstate commerce. But that nursing home would then have to contemplate whether it's going to be accepting insurance funds, which are also impacting interstate commerce. The wheels of our economy are driven by insurance companies, which are interstate and international entities, and the federal government, which is, again, a source of interstate funding. I know we're pretty fed up with the line of the hypothetical here, but I honestly think that there's not a realistic probability of an interstate-funded, solely private nursing home. I have never even heard of an entity of that nature. Thank you. Counsel, in your answer to Justice Lannard's question, and prior to Justice Lannard asking the question, you talked about the contract here, what provisions of the contract referred to some regulations and regulatory provisions suggesting that the nursing home was involved or affected by commerce. However, I have not seen that discussion at all in your brief. This is something new that I've heard today in oral argument. The gist of your argument in your brief was at page 10. The nursing home industry is heavily regulated by the federal government, is involved in the expenditure of Medicaid funds, which are supplied by the federal government. Furthermore, defendant receives out-of-state insurance payments, as well as Medicare payments on behalf of residences, purchases medical equipment and medical supplies from vendors outside of Illinois. You cite Fosler for that, but you also then go on in the next paragraph to say that the estate's argument is misplaced as the FAA does not explicitly require an affidavit to satisfy the interstate commerce requirement. I don't see that as the same argument you're making today. Well, perhaps that's a nearsightedness on my part, because I do think those are the same argument. It's just under the questioning that we've had here, I expounded upon it. I have not yet reached the question of the FAA itself not having an affidavit requirement, nor the fact that the case law indicates that evidentiary material beyond an affidavit may be submitted on a 2619 motion. Because I think the core question on 2619 really should be the substance, which is as counsel himself acknowledges in his brief at page eight, the exhibit that is the contract is undisputed. I apologize. I did not follow the last point you made about the 2619, and that's an important point, I believe. Do you mind repeating it or saying it in other terms? Why, when 2619 requires an affidavit, are you arguing that it isn't required in this case, in this situation? Well, I think the primary reason why we think it's not required is that the Federal Arbitration Act does not require affidavit support. But it doesn't plant the Illinois Procedural Code, does it? I mean, you brought the motion under 2619. I would agree with you. However, in this context, the court had before it an undisputed evidentiary contract signed by the plaintiff's decedent, and plaintiffs themselves didn't move to strike it and didn't dispute it. So I do think that in substance, the court had before it, on the face of the complaint itself, an admission that this is a federal regulatory entity by the reference specifically in subparagraph B of paragraph 58 of every count to the United States CFR. But I also think that the court properly had before it an undisputed contract. And I think that that's the real answer to this. Could I ask, what do you mean by an undisputed contract? If you read the record and the reference that I have in my notes here is on the appellate brief. Appellant agrees that the contract that was provided to the court is in fact Ms. Key's contract. So I don't think we have a dispute as to that contract. I do think that Mr. Nestler's comment about providing a counter affidavit would be if it were necessary to provide an affidavit that we buy equipment from out of state or setting forth the amount of money the company receives from providing care through Medicare or Medicaid that that might be something he might think there's a basis to dispute. But on this record before the court, it is admitted that that contract which is the grounds for the court's ruling below is in fact Ms. Key's contract. Counselor and Justice Zinov, I'm sorry if you had further questioning. I don't want to interrupt. Thank you. Counsel, I just want to make sure I'm understanding this undisputed contract reference. By that statement, do you mean because there has been a concession that that was the contract that she signed for residency and it included a provision that the FAA governed that that solves the issue? Yes, but more. Okay. My question or the area I want to explore though is even if a contract suggests the Federal Arbitration Act would apply, if I go back a little bit to Justice Connex hypothetical, if the parties agree that it applies but it's truly not involving interstate commerce, then I guess my question is where would you land on that issue? Wouldn't that be a condition preceding before the act could be enforceable because that's based on that reference. That is one of the enforceability limitations on the FAA. So I think that the reason why I started with the provisions of the contract make it clear that the services provided by the facility include Medicare and Medicaid related services and that the provisions that we're talking about, it's not just a few points. The reference to FAA is not the only point where you see it where Medicare and Medicaid provisions are part of this contract at A64, where the federal notices are provided and noted at A76 to A77, where the contract itself references the same sections of the CFR starting at 42 CFR 43, which are the sections that govern nursing homes that participate in Medicare and Medicaid. That on the face of the contract, it's not just that there was an agreement to arbitrate under the FAA. It's on the face of the contract, you see it's clear that this was a relationship that affects or is affected by interstate commerce, whether or not there would be a private pay arrangement. And on the face of the contract, the expectation is that if the resident has Medicare or Medicaid eligibility, then the facility will pursue that. And that's agreed to in the written contract. So I don't think the answer begins and ends with the FAA agreement. I think the answer starts with the complaint, which pleads that federal standards apply. Those federal standards, when you follow them through, are because the facility is receiving funds from the federal government. Those federal standards are referenced in the same contract as in the complaint. We've had an interruption. I'll defer to our presiding justice, whether we would give her time to address any argument on the wrongful death claim. Um, I'm okay with that. Justice Connacht, are you? Yes. All right. Justice Lehner? Yes. If you would like to briefly address the wrongful death count. The wrongful death count, as counsel says, on its face under Carter should be remanded with instruction to stay it under Hays, which we briefed. I do think that Carter, which came five years prior to Kindred, should be reconsidered. And I think that Kindred establishes a stronger federal interest in bringing the entire claim to arbitration. But the core question that I think this court should address is that the trial court below correctly referred us to arbitration. And if the wrongful death count should not be referred to arbitration, which I think it should, the proper result is to remand with instructions to stay under Hays. Okay, thank you. Thank you very much, counsel. Mr. Nestler, you have time for rebuttal. Thank you, Your Honor. I'd like to begin by the notion of the quote, undisputed contract. The contract is attached and it's appropriate to attach a contract to show that the contract existed and what the terms of that contract are. It is not appropriate to extrapolate facts that are outside of the confines of that contract. Those facts must be supported by affidavit. And we can look to, again, Fossler and the Carter appellate case to see how courts determine whether interstate commerce is involved in an agreement. They look to the affidavit. Those cases had agreements. Those cases had assertions by attorneys. But the court didn't look to the agreement. The court didn't look to the assertions by the attorneys. The court looked to the affidavit because that's what is a legally sufficient means to get those facts in front of the court. And so we can look to that guidance to realize that the appropriate way to show that interstate commerce is involved is by affidavit. At the trial court, the state brought forth the notion and the argument that interstate commerce is not being shown here. That argument went completely undressed in the trial court. There was no affidavit attached. There was no argument made in the trial court whatsoever in response to the plaintiff's assertion that interstate commerce has not been shown. Therefore, the FAA does not apply. To say that it was somehow undisputed that the contract showed interstate commerce and that's how the case moved forward is inaccurate. To the contrary, it was brought to the court's attention in my response that they need to show interstate commerce in order for the FAA to apply in this case. They did not show there is no legally sufficient showing of interstate commerce. Therefore, the FAA does not apply. With regard to the allegations and the plaintiff's complaint, those allegations are simply allegations of duty. They have no basis to reveal that there's some sort of interstate commerce involved. And I think that counsel's own words that you have to look to the natural conclusion that Medicare applies, dot, dot, dot. In other words, you have to speculate. The rule in sections 2-619 removes the need to speculate. And as I was watching the argument, I was thinking to myself that the entire conversation was, well, what if this, what if that, what if this, what if that? And all of the responses to what if this and what if that are legally insufficient. They're not on the record in the appropriate way. So even as we ask these questions, we're speculating about what the answer is. And they're being based upon the simple assertions of an attorney, as opposed to a legally sufficient affidavit that supports those terms. And so I think what we've really revealed throughout the argument is why an affidavit makes sense, why the legislature decided to get rid of all of the need to speculate and require an affidavit to support facts that are not on the face of the complaint being brought up. And finally, I would end by discussing something that Justice Lannard brought up, and that is, isn't it a condition precedent that the FAA apply in order to approach the arbitration writer in the first place? And I would agree with that wholeheartedly, that you can't get to the arbitration writer in any way unless the FAA applies. And that includes this agreement that's contained within the writer that says we agree to abide by the FAA. It's kind of a cart before the horse or a chicken and the egg type of problem that if the FAA doesn't apply, then the entire arbitration writer doesn't apply. And so you can't get there. And again, I would point out that even arguendo, if you get into the writer, the very language of the writer itself is self-defeating. It specifically states that nothing in the writer should be construed to contradict any applicable Illinois statutory grievance procedure. The Illinois Nursing Home Care Act is an Illinois statutory grievance procedure that lays out how a resident of a nursing home who's been aggrieved by that nursing home or injured by that nursing home might find remedy for that grievance. And for the specific arbitration clause to take out the Nursing Home Care Act means that the confines of that act apply to this case. And I think it's worth mentioning that the Illinois Nursing Home Care Act is discussed throughout this contract. So I think it's very clear that the drafters of the contract intended for the Illinois Nursing Home Care Act to apply to this case. And simply because the terms are inconvenient doesn't mean that they're not the terms of the contract. And again, I'll point the court to Clanton where the court specifically addresses the issue that the goal is not to find a way to arbitrate. The goal is to enforce the terms of the contract. And so even if the FAA applies, and even if we get into the arbitration clause, the terms of this contract still do not contradict the applicability of the Illinois Nursing Home Care Act. And for that reason, arbitration is inappropriate and this court should reverse and remand this clause. Thank you. Thank you very much. Thank you, counsel, both of you for your arguments this morning. The court will take the matter under advisement and render a decision in due course. Court stands adjourned for the day.